UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JOSEPH R. GRIEVESON,                )
                                    )
              Plaintiff,             )
     vs.                             )     No. 1:04-cv-1712-SEB-VSS
                                    )
UNITED STATES OF AMERICA,            )
                                    )
              Defendant.             )

**Entry Discussing United States' Motion to Dismiss**

The United States' motion to dismiss for lack of subject matter jurisdiction is **granted.**[1] This conclusion rests on the following facts and circumstances:

1.   Plaintiff Joseph Grieveson ("Grieveson") was confined for a period of time at the Marion County Jail ("Jail") awaiting disposition of charges pending in this court in No. IP 00-71-CR-B/F. He was confined at the Jail for that purpose by virtue of: (a) the court's order of detention pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142; (b) his placement in the custody of the United States Marshal for this District pursuant to that order of detention; and (c) a contract between the Jail and the United States Marshal Service ("USMS") providing for the placement of federal detainees, among others, in the Jail when so designated by the USMS. Grieveson alleges in this action that while at the Jail he was denied adequate medical treatment. He seeks damages from the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

2.   The United States has filed a motion to dismiss and alternative motion for summary judgment. The motion to dismiss is based on the asserted lack of jurisdiction pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure*. Grieveson has opposed the United States' motion.

---

[1]Because the motion to dismiss is based on a claim that the court lacks subject matter jurisdiction over the plaintiff's claim, and because that argument is dispositive, the court does not reach the United States' alternative motion for summary judgment.

3.     The United States is immune from an action for damages except and so far as its sovereign immunity has been waived. *Sherwood.* The FTCA is one such waiver and is the statute invoked by Grieveson. The FTCA renders the federal government liable in tort to the same extent that a private individual would be in like circumstances. *See Belluomini v. United States,* 64 F.3d 299, 303 (7th Cir. 1995) (stating that federal government has waived sovereign immunity whenever a "private defendant standing in the shoes of the United States would also face liability").[2]

4.     The FTCA, however, does not waive the United States' sovereign immunity under all circumstances. One exception to its waiver is found in 2675(e), which exempts the United States from liability under the FTCA based on the actual or alleged misconduct of an independent contractor. *Alinsky v. United States,* 2005 WL 1631119 (7th Cir. July 13, 2005).  The FTCA is to be strictly construed and all ambiguities are resolved in favor of the sovereign. *United States v. Nordic Village, Inc.* 503 U.S. 30, 33 (1992).

5.     The undisputed evidentiary record in this action shows the following:

a.     On October 1, 1997, the United States Marshal for this District, on behalf of the USMS, and the then-Sheriff of Marion County, on behalf of the Jail, entered into a written contract for the housing of federal prisoners at the Jail. This document is referred to hereafter as the "prisoner housing contract."

b.     The prisoner housing contract provided that, in exchange for payment by the USMS, the Jail would provid housing, safekeeping and subsistence of adult male and female federal prisoners.  The prisoners to whom the prisoner housing contract pertained are unsentenced inmates.

c.     The USMS is given the authority to enter into the prisoner housing contract by 18 U.S.C. § 4002. This statute provides as follows:

> For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Attorney General may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

---

[2]The statutory provision states in part:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

      d.      The prisoner housing contract provided, in part, that the Jail agreed "to accept and provide for the secure custody, care and safekeeping in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the [Jail]." The precise manner in which these responsibilities are to be carried out is not specified in the prisoner housing contract.

      e.      The prisoner housing contract was modified on March 1, 1999, to reduce the per diem rate for inmates housed at the Jail pursuant to the prisoner housing contract. The designation of the prisoner housing contract was changed at the time of the March 1, 1999, modification from J-C28-M-061 to 28-99-0110.

      f.      Grieveson was confined at the Jail from March 16, 2000, to March 30, 2001, and again from December 21, 2001, to January 11, 2002. He was confined at the Jail during these periods pursuant to this court's order in No. IP 00-71-CR-B/F, and the prisoner housing contract.

      g.      Grieveson's claims concerning inadequate medical care in this action are based on incidents occurring at the Jail. The USMS, however, was never notified that the Jail was unable to provide him with any needed medical treatment, or that he required additional medical attention before he could travel.

      6.      It is thus undisputed that Grieveson's claims are based on the conditions of his confinement and his treatment at the Jail. The determination of whether an entity should be classified as a contractor or employee depends upon the amount of governmental agency control of physical performance of the entity's day-to-day activities. *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (citing cases). A careful study of the prisoner housing contract between the USMS and the Jail demonstrates that Jail authorities had great latitude in selecting the means of implementing the guidelines set forth in the contract. The prisoner housing contract does not contemplate that the USMS would control the physical performance of the Jail, and the existence of the guidelines "do[es] not convert the acts of [the Jail or its personnel] into federal governmental acts." *United States v. Orleans,* 425 U.S. 807, 816-18 (1976). Insofar as pertinent here, the Jail was clearly a contractor, not an employee of the Jail. In *Logue v. United States,* 412 U.S. 521, 528-29 (1973), the Supreme Court found a county jail that contracted with the Federal Bureau of Prisons to detain federal prisoners was not an employee of the Federal Government. Rather, the Court found the jail to be an independent contractor of the Government, because the United States did not have authority under its contract with the jail to physically supervise the conduct of the jail's employees. Instead, the Government's authority was limited to supervision of the jail to guarantee its compliance with federal prison standards relating to conditions and the treatment of prisoners. 412 U.S. at 529-30. The same circumstances exist here. Grieveson's arguments against the foregoing conclusion are not persuasive: his suggestion that because the prisoner housing contract was between the USMS and another unit of government that the Jail became the United States or an agency of United States is unsupported by any authority or any logic. On the contrary, "Federal Agency" is defined by the pertinent statute as including "corporations primarily acting as instrumentalities or agencies of the United States, but . . . not . . . any contractor with the United States." 28 U.S.C. § 2671. Grieveson also points out that while detained in the Jail he was in federal custody, which of course is true, but his physical custody was contracted to that of the Jail. It is therefore evident that, because of the independent contractor exemption, liability for any tort committed against Grieveson while confined at the Jail is not a claim which is compensable under the FTCA.

7. "The court's power to enter a judgment of any kind, in favor of either side, depends on the existence of "jurisdiction." *Tisza v. Communications Workers,* 953 F.2d 298, 300 (7th Cir. 1992). Once a court determines that it lacks jurisdiction, it must proceed no further. *Illinois v. Chicago,* 137 F.3d 474, 478-79 (7th Cir. 1998). In adopting the FTCA, "Congress expressly granted jurisdiction for suits brought against the United States for its employees' conduct, and not the conduct of contractors." *Alinsky v. United States,* 2005 WL 1631119, at \*\*. This line of demarcation controls the outcome of the present case. Grieveson has brought a claim as to which the United States' sovereign immunity has not been waived, and for this reason the United States' motion to dismiss for lack of jurisdiction must be granted. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/18/2005

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana